IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff , ) | |
| ) | |
| v. ) | Civil Action No. 3:00cv472-GCM |
| ) | |
| WILLIAM J. ROPER, SR., ) | |
| NANCY ROPER ) | |
| WILLIAM J. ROPER, JR., ) | |
| DEBORAH ROPER ) | |
| ROPER SHOPPING CENTER AT ) | |
| 510 WOODLAWN ROAD, ) | |
| AS DESCRIBED IN DEED BOOK ) | |
| 2854, PAGE 602 ) | |
| ) | |
| Defendants. ) | |
| ) | |

## CONSENT DECREE

A.     The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9607, as amended ("CERCLA"), seeking reimbursement of Response Costs incurred or to be incurred for response actions taken at or in connection with the release or threatened release of hazardous substances at the North Belmont PCE Site located in Belmont, Gaston County, North Carolina.

B.     The defendants that have entered into this Consent Decree ("Settling Defendants") do not admit any liability to Plaintiff arising out of the transactions or occurrences alleged in the complaint.

C.     The United States has reviewed the Financial Information submitted by Settling Defendants to determine whether Settling Defendants are financially able to pay Response Costs incurred and to be incurred at the Site.  Based upon this Financial Information, the United States has determined that Settling Defendants are able to pay the amounts specified in Section V.

D.     The United States and Settling Defendants agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith,

that settlement of this matter will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

THEREFORE, with the consent of the Parties to this Decree, it is ORDERED, ADJUDGED, AND DECREED:

## I. JURISDICTION

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. §§ 9607 and 9613(b) and also has personal jurisdiction over Settling Defendants.  Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District.  Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## II. PARTIES BOUND

2.     This Consent Decree is binding upon the United States, and upon Settling Defendants and their heirs, successors and assigns.  Any change in ownership or corporate or other legal status, including but not limited to, any transfer of assets or real or personal property, shall in no way alter the status or responsibilities of Settling Defendants under this Consent Decree.

## III. DEFINITIONS

3.     Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meanings assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent Decree or in any appendix attached hereto, the following definitions shall apply:

A.     "Best Efforts to Transfer" shall mean taking all actions reasonably necessary to facilitate and expedite the sale of the Property in a commercially reasonable manner, which shall include, at least, the following: (i) listing the Property, for a period of 24 months, with a broker or agent who deals with commercial and/or industrial property; (ii) advertising the Property for sale, for a period of 24 months which must include full weekend (Saturday and Sunday) advertising, in a real estate publication or a newspaper of general circulation (defined as one with a circulation of more than 5,000) covering the region where the Property is located; (iii) responding to the reasonable inquiries of prospective buyers; (iv) maintaining the Property in a condition suitable for exhibition to prospective buyers, provided , however, that the Property shall be sold and maintained prior to sale "AS IS", and Settling Defendants shall be under no obligation to expend funds for the repair, rehabilitation, refurbishment or maintenance of the Property prior to Sale; (v) allowing the Property to be shown at all reasonable times.

B.     "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9601, *et seq.*

2

C.     "Consent Decree" shall mean this Consent Decree and all appendices attached hereto. In the event of conflict between this Consent Decree and any appendix, the Consent Decree shall control.

D.     "Costs of Sale" shall mean the reasonable commission owed any broker or agent upon a Transfer, the reasonable fees and costs of the auctioneer referenced in Paragraph 14.D. of Section V hereof, as well as reasonable costs incurred by the Settling Defendants to market or sell the Property (including but not limited to advertising or listing expenses).

E.     "Day" shall mean a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

F.     "DOJ" shall mean the United States Department of Justice and any successor departments, agencies or instrumentalities of the United States.

G.     "Effective Date" shall mean the date that the Court enters this Consent Decree.

H.     "EPA" shall mean the United States Environmental Protection Agency and any successor departments, agencies or instrumentalities of the United States.

I.     "EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

J.     "Fair Market Value" (except in the event of a foreclosure or transfer by deed or other assignment in lieu of foreclosure) shall mean the price at which the Property would change hands between a willing buyer and a willing seller under actual market conditions, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts. However, unless the parties hereto explicitly agree otherwise in writing, "Fair Market Value" shall, under no circumstances, be less than $303,000 (except in the event of a foreclosure or transfer by deed or other assignment in lieu of foreclosure). In the event of a transfer by foreclosure, "Fair Market Value" shall mean the amount obtained at the foreclosure sale. In the event of a transfer by a deed or other assignment in lieu of foreclosure, "Fair Market Value" shall mean the balance of Settling Defendants' mortgage on the Property at the time of transfer.

K.     "Financial Information" shall mean all documentation submitted to the United States to date containing information on any of Settling Defendants' financial ability to pay relative to any Settling Defendant's environmental liability at this Site.

L.     "Insurance Information" shall mean all documentation submitted to the United States to date containing information on any insurance policies under which any of Settling Defendants, or any company with which they were affiliated, was an insured.

M.     "Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate

of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

N. "Net Sales Proceeds" shall mean the total value of all consideration received by Settling Defendants for each Transfer (or if the consideration cannot be determined, the Fair Market Value of the Property), less the Costs of Sale. Settling Defendants shall provide EPA with documentation sufficient to show the total value of all consideration received by Settling Defendants for each Transfer (or if the consideration cannot be determined, the Fair Market Value of the Property) at the time of each Transfer, the amount of the proceeds of the Transfer, and the amount of the Costs of Sale on the date of Transfer.

O. "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

P. "Parties" shall mean the United States and Settling Defendants.

Q. "Plaintiff" shall mean the United States.

R. "Property" shall mean that portion of the Site that is known as the Roper Shopping Center and owned by Settling Defendants as of the Effective Date of this Consent Decree. The Property is located in North Belmont, Gaston County, North Carolina, and is more specifically described in the deed book records page included as Exhibit A to this Consent Decree.

S. "Response Costs" shall mean all costs, including but not limited to direct and indirect costs that EPA or DOJ on behalf of EPA has paid or will pay at or in connection with the Site, plus accrued Interest on all such costs.

T. "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

U. "Settling Defendants" shall mean the Estate of William J. Roper, Sr., Nancy Roper, William J. Roper, Jr., and Deborah Roper.

V. "Site" shall mean the North Belmont PCE Superfund site consisting of approximately 160 acres, including the Property, and located in Belmont, Gaston County, North Carolina, and generally indicated on the map included as Exhibit B to this Consent Decree.

W. "Transfer" shall mean each sale, assignment, transfer, or exchange by Settling Defendants (or their successors or heirs) of the Property, or any portion thereof, or of the entity owning the Property, where title to the Property (or any portion or interest thereof) or to the entity owning the Property: (i) is transferred and Fair Market Value is received in consideration; or (ii) is transferred involuntarily by operation of law (including foreclosure and its equivalents following default on the indebtedness secured, in whole or in part, by the Property, including, but not limited to, a deed or other assignment in lieu of foreclosure). A Transfer does not include a transfer pursuant to an inheritance or a bequest, or a lease of part or all of the property.

4

X.    "United States" shall mean the United States of America, including its departments, agencies and instrumentalities.

## IV. **BACKGROUND**

4.    During the approximate period of 1962 to 1975, Defendants William J. Roper Sr. (deceased) and Nancy Roper, owned the Property and leased a portion of the Roper Shopping Center to Untz Dry Cleaners, a dry cleaning facility. The United States alleges that during the time period of his lease, Mr. Untz and his employees disposed of the spent dry cleaning solvents by dumping them on the ground or into the septic system, thereby contaminating the shopping center groundwater.

5.    The United States alleges that Untz Dry Cleaners' activities at the Site resulted in the spilling, leaking or other release or threatened release of chemicals in to groundwater and drinking water wells in the area, including chemicals that constitute or contain hazardous substances within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), and 40 C.F.R. § 302.4.

6.    The Site was initially investigated by the Gaston County Health Department in February of 1991, to evaluate community water supplies for Volatile Organic Compounds ("VOC's"). Results indicated significant contamination by VOCs including perchloroethylene ("PCE") , trichloroethylene ("TCE") and 1,2-dichloroethylene ("DCE").

7.    EPA was contacted for assistance and, in February 1991, EPA Region IV's Emergency Response and Removal Branch began collecting and analyzing drinking water samples from wells in the area. PCE, TCE, and CE were again detected in high concentrations.

8.    EPA set up temporary water tanks for use by the residents and supplied bottled drinking water to the residents and the school students in the area. EPA took out of service the contaminated drinking water wells and set up monitoring wells on-Site.

9.    Both the State of North Carolina and the EPA conducted site investigations in 1993 and 1995. In 1996, EPA constructed a one-mile water line extension thereby connecting 29 affected residences to with the City of Belmont's public water system.

10.    EPA issued a Record of Decision in 1997, which described the selected remedy for the Site, including groundwater exposure abatement along with groundwater treatment. The remedy is expected to take ten years and has in the past included groundwater remediation activities at the Property. Monitoring of the Site is expected to continue for approximately fifteen years.

11.    The Site ranked on the National Priority List on July 22, 1999, and remedial action has continued into the year 2007. EPA has incurred $7,473,369.29 in Response Costs at the site as of April 13, 2005.

12.     William J. Roper died in December 2004, and the other defendants have submitted financial information which demonstrates an inability to pay the Response Costs at this site.

13.     The Settling Defendants have provided the United States with a complete listing of the property they own. The parties have agreed that the only property of value which Settling Defendants possess and which should be subject to the sale pursuant to this Consent Decree is the Roper Shopping Center, or Property.

## V. SALE OF PROPERTY AND PAYMENT OF PROCEEDS

14.     Sale of Property. If the Property has not been sold by the Effective Date of this Consent Decree, the Settling Defendants shall perform the following:

A.     Settling Defendants will advance all reasonable costs to market or sell the Property including but not limited to advertising or listing expenses.

B.     Settling Defendants agree that they will not sell, assign, transfer, or exchange the Property except by means of a Transfer. Settling Defendants shall use their Best Efforts to Transfer the Property beginning sixty (60) days after the Effective Date of this Consent Decree. The parties recognize that any prospective purchaser of the Property could request a letter from EPA that addresses whether any further response action is planned for the property and what steps must be taken by the prospective purchaser to avail itself of Bona Fide Prospective Purchaser status under CERCLA Sections 101(4) and 107(r), 42 U.S.C. Sections 9601(4) and 9607(r).

C.     Within ninety (90) days after the Effective Date of this Consent Decree, Settling Defendants shall submit to EPA, information documenting their Best Efforts to Transfer the Property. This information shall be sent, return receipt requested, to Associate Regional Counsel, U.S. EPA, Region 4, at the address provided in Paragraph 41. Settling Defendants shall, every 90 days thereafter, submit an update documenting their continuing Best Efforts to Transfer the Property.

D.     If the Property is not sold within twenty-four (24) months after the Effective Date of this Consent Decree, Settling Defendants shall sell the Property at a public auction, to the highest bidder within 30 months of date of entry of the Decree. The auctioneer must be a professional, commercial auctioneer.

E.     At least thirty (30) days prior to any Transfer, or such shorter period as the Parties may agree in writing, Settling Defendants shall notify EPA of the proposed Transfer, which notice shall include a description of the Property or portion thereof to be transferred, the identity of the purchaser or transferee, the terms of the Transfer, the consideration to be paid, and a copy of the Transfer agreement. If the amount of the consideration to be paid is equal to or greater than the Fair Market Value, and if the offer does not contain commercially unreasonable contingencies or terms, then Settling Defendants shall sell the Site Property. If the amount of the offer is not equal or greater

than the Fair Market Value, then the decision to accept the offer and to sell the Property is within EPA's sole discretion.

E.  Settling Defendants shall notify EPA of the completion of the Transfer within ten (10) days after the date of Transfer and shall include with such notification a copy of the closing binder, including copies of final executed documentation for the conveyance and a work sheet setting forth the Net Sales Proceeds and the amount payable to EPA.

F.  In the event of a Transfer of the Property or any portion thereof, Settling Defendants shall continue to be bound by all the terms and conditions, and subject to all the benefits, of this Consent Decree except if the United States and Settling Defendants modify this Consent Decree in writing.

15.  Payment of Proceeds. Upon Transfer of the Property pursuant to Paragraph 14 above, Settling Defendants shall perform the following:

A.  Upon receipt of the Net Sale Proceeds from a Transfer of the Property by sale or auction by Settling Defendants, Settling Defendants shall pay to EPA seventy-five (75) percent of the Net Sale Proceeds of the Transfer of the Property. Payment shall be made within 14 days of the effective date of the Transfer of the Property, and shall be made in accordance with Paragraph 15.D.

B.  Any taxes due on the Property shall be deducted from the remaining Twenty-Five (25) percent of the Net Sales Proceeds after payment pursuant to Paragraph 15.A. Settling Defendants shall bear the full burden of paying all taxes on the Property.

C.  In the event the Property is Transferred before the Effective Date of this Consent Decree, Settling Defendants must pay to the United States an amount representing Seventy-Five Percent (75%) of the total amount for which the property was Transferred and Payment shall be made within 14 days of the effective date of this Consent Decree, and shall be made in accordance with Paragraph 15.D.

D.  Payment shall be made by certified or cashier's check made payable to "EPA Hazardous Substance Superfund." The check, or a letter accompanying the check, shall refer to the name and address of Settling Defendants, the Site name, the EPA Region 4 Site ID # 04-QD, and the CERCLA Docket Number for this action, and shall be sent to:

Paula V. Batchelor
Superfund Accounting Division
U.S. EPA Region 4
Box Number 100142
Atlanta, GA 30384

At the time of payment, Settling Defendants shall also send notice to EPA in accordance

with Section XVI (Notices and Submissions) that payment has been made. Such notice shall refer to EPA Region 4 Site ID #A4Y1 and the CERCLA Docket Number for this action. The total amount to be paid by Settling Defendants pursuant to this Paragraph shall be deposited by EPA into the EPA Hazardous Substance Superfund.

16.     Foreclosure or Auction by the United States. If the Property is not sold pursuant to Paragraph 14, the United States shall be entitled to foreclose upon or auction the Property. If the United States forecloses on the Property and/or auctions the Property, the United States retains one hundred percent (100) of the Net Sale Proceeds. The United States shall not foreclose on the Property during the 30 months allowed for sale or auction of the Property as provided in Paragraph 14.

17.     Future Sale. If the Property is not sold as a result of an auction by Settling Defendants pursuant to Paragraph 14.D. even though Settling Defendants used best efforts to auction the property, then Settling Defendants shall have no further obligation to sell the Property under this Decree. However, the Federal Lien will remain in effect as per Paragraph 22.

## VI. FAILURE TO COMPLY WITH CONSENT DECREE

18.     Interest on Late Payments. If Settling Defendants fail to make any payments required by Section V. by the required due date, Interest shall accrue on the unpaid balance through the date of payment.

19.     Stipulated Penalty.

A.     If any amounts due under Section V. are not paid by the required date, Settling Defendants shall be in violation of this Consent Decree and shall pay to EPA, as a stipulated penalty, in addition to the Interest required by Paragraph 18, three hundred dollars ($300.00) per violation per day that such payment is late. If Settling Defendants do not comply with any other requirements of this Consent Decree Settling Defendants shall be in violation of this Consent Decree and shall pay to EPA, as a stipulated penalty, one hundred fifty dollars ($150.00) per violation per day of such non-compliance.

B.     Stipulated penalties are due and payable within thirty (30) days of the date of demand for payment of the penalties by EPA. All payments to EPA under this Paragraph shall be identified as "stipulated penalties" and shall made by certified or cashier's check made payable to "EPA Hazardous Substance Superfund." The check, or a letter accompanying the check, shall reference the name and address of Settling Defendants, the Site name, the EPA Region 4 Site/Spill ID# 04-QD, and the CERCLA docket number for this action, and shall be sent to:

Paula V. Batchelor
Superfund Accounting Division
U.S. EPA Region 4
Box Number 100142
Atlanta, GA 30384

8

C.    At the time of each payment, Settling Defendants shall send notice that such payment has been made to EPA in accordance with Section XVI (Notices and Submissions). Such notice shall identify the Region 4 Site/Spill ID # 04-QD, and the CERCLA Docket Number for this action.

D.    Penalties shall accrue as provided above regardless of whether EPA has notified Settling Defendants of the violation or made a demand for payment, but need be paid only upon demand. All penalties shall begin to accrue on the day after payment or performance is due or the day a violation occurs, and penalties shall continue to accrue through the date of payment or the final day of correction of the noncompliance or completion of the activity. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

20.    Payments made under this Section shall be in addition to any other remedies or sanctions available to the United States by virtue of Settling Defendants' failure to comply with the requirements of this Consent Decree. If the United States brings an action to enforce this Consent Decree, Settling Parties shall reimburse the United States for all costs of such action, including but not limited to costs of attorney time.

21.    Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive payment of any portion of the stipulated penalties that have accrued pursuant to this Consent Decree. Settling Defendants' payment of stipulated penalties shall not excuse Settling Defendants from payment as required by Section V or from performance of any other requirements of this Consent Decree.

## VII. NOTICE OF RELEASE OF FEDERAL LIEN

22.    In exchange for receipt of all payments required by Section V of this Consent Decree, EPA shall deliver to Settling Defendants a Notice of Release of Federal Lien for filing in the Office of the Clerk of Court for Gaston County, North Carolina. The Notice of Release of Federal Lien shall release the Federal Lien filed on March 9, 2000, at 9:16 a.m., in the Gaston County Office of Records, in Book 3059 at Page 303. If the Settling Defendants are unable to sell, auction or otherwise transfer the Property within 30 months after entry of the Decree, then the United States will not release the lien on the Property until it is either auctioned by the United States or the Federal Lien is otherwise satisfied.

## VIII. COVENANT NOT TO SUE BY UNITED STATES

23.    Except as specifically provided in Section IX (Reservations of Rights by United States), the United States covenants not to sue or to take administrative action against Settling Defendants pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), relating to the Site. This covenant shall take effect upon receipt by United States of all amounts required to be paid by Section V, along with any amount due under Section VI (Failure to Comply with Consent Decree). If no amounts are paid to the United States pursuant to Paragraphs 14 and 17, then this covenant not to sue shall take effect no later than thirty months

9

after entry of this Consent Decree. This covenant not to sue is conditioned upon the satisfactory performance by Settling Defendants of their obligations under this Consent Decree. This covenant not to sue is also conditioned upon the veracity and completeness of the Financial Information and the Insurance Information provided to the United States by Settling Defendants. If any of the Financial Information or Insurance Information is subsequently determined by the United States to be false or, in any material respect, inaccurate, Settling Defendants shall forfeit all payments made pursuant to this Consent Decree and the covenant not to sue shall be null and void. Such forfeiture shall not constitute liquidated damages and shall not in any way foreclose the United States' right to pursue any other causes of action arising from Settling Defendants' false or materially inaccurate information. This covenant not to sue extends only to Settling Defendants and does not extend to any other person.

## IX. RESERVATIONS OF RIGHTS BY UNITED STATES

24. The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to all matters not expressly included within the Covenant Not to Sue by United States in Paragraph 23. Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendants with respect to:

      A.    Liability for failure of Settling Defendants to meet a requirement of this Consent Decree;

      B.    Criminal liability;

      C.    Liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

      D.    Liability under Section 106 or 107 of CERCLA based on any action (other than ownership of real property) of any Settling Defendant after signature of this Consent Decree; and

      E.    Liability arising from the past, present, or future disposal, release or threat of release of a hazardous substance, pollutant, or contaminant outside of the Site.

25. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to re-institute or re-open this action, or to commence a new action seeking relief other than as provided in this Consent Decree, if any of the Financial Information or the Insurance Information provided by Settling Defendants, or the certification made by Settling Defendants in Paragraph XV, is false or, in any material respect, inaccurate.

26. Nothing in this Consent Decree is intended to be nor shall it be construed as a release, covenant not to sue, or compromise of any claim or cause of action, administrative or judicial, civil or criminal, past or future, in law or in equity, which the United States may have against any person, firm, corporation or other entity not a signatory to this Consent Decree.

## X. COVENANT NOT TO SUE BY SETTLING DEFENDANTS

27.    Except with regard to the terms of this Consent Decree, which the parties agree are binding and enforceable against each other, the Settling Defendants agree not to assert any claims or causes of action against the United States, or its contractors or employees, with respect to the Site or this Consent Decree, including but not limited to:

      A.    Any direct or indirect claim for reimbursement from the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

      B.    Any claim arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the North Carolina Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law; or

      C.    Any claim against the United States pursuant to Sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607 and 9613, relating to the Site.

28.    Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. 300.700(d).

29.    Settling Defendants agree not to assert any claims or causes of action that they may have for all matters relating to the Site, including for contribution, against any other person. This waiver shall not apply with respect to any defense, claim, or cause of action that Settling Defendants may have against any person if such person asserts a claim or cause of action relating to the Site against such Settling Defendants.

## XI. EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION

30.    Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. The United States reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action that it may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person who is not one of the parties hereto.

31.    The Parties agree that Settling Defendants are entitled, as of the Effective Date of this Consent Decree, to protection from contribution actions or claims as provided by Sections 113(f)(2) and 122(h)(4) of CERCLA, 42 U.S.C. §§ 9613(f)(2) and 9622(h)(4), for "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are all response actions taken and all Response Costs incurred at or in connection with the Site, by the United States or any other person. The "matters addressed" in this Consent Decree do not include those Response Costs or response actions as to which the United States has reserved its rights under this Consent Decree (except for claims for failure to comply with this Consent

Decree), in the event that the United States asserts rights against the Settling Defendants coming within the scope of such reservations.

32.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of Response Costs, or other relief relating to the Site, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been addressed in this Consent Decree; provided, however, that nothing in this Paragraph affects the enforceability of the Covenant Not to Sue by the United States set forth in Section VIII.

## XII. SITE ACCESS

33.     If the Site, or any other property where access is needed to implement response activities at the Site, is owned or controlled by any of Settling Defendants, such Settling Defendants shall, commencing on the date of lodging of this Consent Decree, provide the United States, and its representatives, including EPA and contractors, with access at all reasonable times to the Site, or to such other property, for the purpose of conducting any response activity related to the Site, including, but not limited to, the following activities:

      A.     Monitoring, investigation, removal, remedial or other activities at the Site;

      B.     Verifying any data or information submitted to the United States;

      C.     Conducting investigations relating to contamination at or near the Site;

      D.     Obtaining samples;

      E.     Assessing the need for, planning, or implementing response actions at or near the Site;

      F.     Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendants or their agents, consistent with Section VIII(Access to Information); and

      G.     Assessing Settling Defendants' compliance with this Consent Decree.

34.     Notwithstanding any provision of this Consent Decree, the United States retains all of its access authorities and rights, as well as all of its rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statute or regulations.

## XIII. ACCESS TO INFORMATION

35.     Settling Defendants shall provide to the United States, upon request, copies of all records, reports, or information (hereinafter referred to as "records") within their possession or

control or that of their contractors or agents relating to activities at the Site, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Site, provided, however, that Settling Defendants need not retain or provide copies of records which were originated by EPA, the State of North Carolina, or Gaston County, or their agents or contractors. Because regulatory authorities conducted the sampling, testing and remediation activities at the Site, Settling Defendants represent that they did not conduct any such investigations, and do not have in their possession or control records described in the preceding sentence other than those originated by EPA, the State of North Carolina and Gaston County, their agents or contractors and retained by counsel for Settling Defendants.

36.     Confidential Business Information and Privileged Documents.

A.     Settling Defendants may assert business confidentiality claims covering part or all of the records submitted to the United States under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. 2.203(b). Records determined to be confidential by EPA will be accorded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies records when they are submitted to EPA, or if EPA has notified Settling Defendants that the records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2 Subpart B, the public may be given access to such records without further notice to Settling Defendants.

B.     Settling Defendants may assert that certain records are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Settling Defendants assert such a privilege in lieu of providing records, they shall provide the United States with the following: 1) the title of the record; 2) the date of the record; 3) the name, title, affiliation (e.g., company or firm), and address of the author of the record; 4) the name and title of each addressee and recipient; 5) a description of the subject of the record; and 6) the privilege asserted. If a claim of privilege applies only to a portion of a record, the record shall be provided to the United States in redacted form to mask the privileged information only. Settling Defendants shall retain all records that they claim to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in Settling Defendants' favor. However, no records created or generated pursuant to the requirements of this or any other settlement with the EPA pertaining to the Site shall be withheld on the grounds that they are privileged.

37.     No claim of confidentiality shall be made with respect to any data, including but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Site.

## XIV. **RETENTION OF RECORDS**

38.     Until 10 years after the entry of this Consent Decree, each Settling Defendant shall preserve and retain all records now in its possession or control, or which come into its

possession or control, that relate in any manner to response actions taken at the Site or the liability of any person under CERCLA with respect to the Site, regardless of any corporate retention policy to the contrary, provided, however, that Settling Defendants need not retain or provide copies of records which were originated by EPA, the State of North Carolina, or Gaston County, or their agents or contractors.

39. After the conclusion of the 10-year document retention period in the preceding paragraph, Settling Defendants shall notify EPA and DOJ at least 90 days prior to the destruction of any such records, and, upon request by EPA or DOJ, Settling Defendants shall deliver any such records to EPA. Settling Defendants may assert that certain records are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Settling Defendants assert such a privilege, they shall provide the United States with the following: A) the title of the record; B) the date of the record; C) the name, title, affiliation (*e.g.*, company or firm), and address of the author of the record; D) the name and title of each addressee and recipient; E) a description of the subject of the record; and F) the privilege asserted. If a claim of privilege applies only to a portion of a record, the record shall be provided to United States in redacted form to mask the privileged information only. The Settling Defendants shall retain all records that they claim to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in the Settling Defendants' favor. However, no records created or generated pursuant to the requirements of this or any other settlement with the United States pertaining to the Site shall be withheld on the grounds that they are privileged.

## XV. CERTIFICATION

40. Settling Defendants represent that they have not located any records or documents relating to a lease of Roper Shopping Center Property to Untz Dry Cleaners, or to the disposal of any hazardous substances at the Site by Untz Dry Cleaners, its agents or employees.

41. Excepting copies of records which were originated by EPA, the State or North Carolina, Gaston County, or their agents or contractors, copies of which are in the possession of Settling Defendants' counsel, Settling Defendants each hereby certify that, to the best of their knowledge and belief, after thorough inquiry, they have:

    A. Not altered, mutilated, discarded, destroyed or otherwise disposed of any records, reports, or information relating to their potential liability regarding the Site since notification of potential liability by the United States or the state or the filing of a suit against it regarding the Site and that they have fully complied with any and all requests of the United States for documents or information regarding the Site and Settling Defendants' financial circumstances pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e);

    B. Submitted to the United States Financial Information that fairly, accurately, and materially sets forth financial circumstances of each Settling Defendant, and that those circumstances have not materially changed between the time the Financial

Information was submitted to EPA and the time Settling Defendants execute this Consent Decree;

C.     Fully disclosed the existence of any insurance policies that may cover claims relating to cleanup of the Site, and have submitted all available Insurance Information, including all available policies and other information required by the United States relative to insurance coverage of claims relating to cleanup of the Site; and

D.     Not received any insurance proceeds relative to the Site, nor do any of Settling Defendants anticipate submitting any insurance claims or recovering any insurance proceeds in the future relative to claims of environmental liability at the Site.

## XVI.   FORCE MAJEURE

42.     "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Settling Defendants, or of Settling Defendants' agents or contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Settling Defendants' best efforts to fulfill the obligation. The requirement that Settling Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any potential Force Majeure event (1) as it is occurring and (2) following the potential Force Majeure event, such that the delay is minimized to the greatest extent possible. Force Majeure does not include financial inability to perform Settling Defendants' duties under this Consent Decree.

43.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, Settling Defendants shall notify EPA within 7 days after Settling Defendants first knew that the event might cause a delay. Within 7 days thereafter, Settling Defendants shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Settling Defendants' rationale for attributing such delay to a Force Majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of the Settling Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. Settling Defendants shall include with any notice all available documentation supporting their claim that the delay was attributable to a Force Majeure event. Failure to comply with the above requirements shall preclude Settling Defendants from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Settling Defendants shall be deemed to know of any circumstance of which Settling Defendants or Settling Defendants' agents or contractors knew or should have known.

44.     In the event EPA does not agree that the delay is attributable to a Force Majeure event, Settling Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure event, that the duration of the delay or the extension sought was or will be warranted under the

circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendants complied with the requirements of this Section. If Settling Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Settling Defendants of the affected obligation(s) of this Consent Decree identified to EPA. If EPA agrees that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event will be extended by EPA for such time as is necessary to complete those obligations, and EPA will notify the Settling Defendants in writing of this decision. An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation. If EPA does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, EPA will notify the Settlement Defendants in writing of its decision.

45.     Any decision by EPA that the delay is not attributable to a Force Majeure event shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the Settling Defendants with the Court and served on all Parties within 10 days of receipt of EPA's decision as set forth in Paragraph 44. The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States may file a response to Settling Defendants' motion within 30 days of receipt of the motion. In proceedings on any dispute governed by this Paragraph, Settling Defendants shall have the burden of demonstrating that the decision of EPA is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record.

## XVII. NOTICES AND SUBMISSIONS

46.     Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Settling Defendants in writing. Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, DOJ, and Settling Defendants, respectively.

As to the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice DJ # 90-11-3-07246
P.O. Box 7611
Washington, D.C. 20044-7611
ATTENTION : CHERYL L. SMOUT

Lucia C. Mendez
Associate Regional Counsel

Office of Environmental Accountability
U.S. EPA Region 4
61 Forsyth Street, S.W.
Atlanta, GA 30303

Brenita Richardson
Remedial Project Manger
SEIMB, Waste Management Division
U.S. EPA Region 4
61 Forsyth Street, S.W.
Atlanta, GA 30303

As to Settling Defendants:
William J. Roper, Jr.
Deborah Roper
Nancy Roper
904 S. Main Street
Mt. Holly, N.C. 28120-2019

With a copy to:
Thomas W. Murrell, III
McGuireWoods LLP
201 North Tryon Street
Charlotte, NC 28202

## XVIII.  RETENTION OF JURISDICTION

47.     This Court shall retain jurisdiction over this matter for the purpose of interpreting
and enforcing the terms of this Consent Decree.

## XIX.  INTEGRATION/APPENDICES

48.     This Consent Decree constitutes the final, complete and exclusive agreement and
understanding among the Parties with respect to the settlement embodied in this Consent Decree.
The Parties acknowledge that there are no representations, agreements or understandings relating
to the settlement other than those expressly contained in this Consent Decree.  The following
appendices are attached to and incorporated into this Consent Decree:  "Appendix A" is the
Property Description for the Roper Shopping Center.  "Appendix B" is the map of the Site.

## XX.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

49.     This Consent Decree shall be lodged with the Court for a period of not less than
30 days for public notice and comment.  The United States reserves the right to withdraw or
withhold its consent if the comments regarding the Consent Decree disclose facts or

considerations which indicate that this Consent Decree is inappropriate, improper, or inadequate. Settling Defendants consent to the entry of this Consent Decree without further notice.

50. If for any reason this Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the sole discretion of any party and the terms of the Consent Decree may not be used as evidence in any litigation between the Parties.

## XXI. SIGNATORIES/SERVICE

51. Each undersigned representative of a Settling Defendant to this Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the United States Department of Justice certifies that he or she is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally such Party to this document.

52. Each Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States has notified Settling Defendants in writing that it no longer supports entry of the Consent Decree.

53. Each Settling Defendant shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree.

## XXII. FINAL JUDGMENT

54. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute the final judgment between and among the United States and Settling Defendants. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS _____ DAY OF _____, 20___.

United States District Judge

THE UNDERSIGNED PARTY enters into this Consent Decree in the case of <u>United States v.</u> <u>William J. Roper Sr. et al.</u>, (W.D. N.C.) Civil Action No. 3:00CV472-GCM, relating to the North Belmont PCE Superfund Site.

FOR THE UNITED STATES OF AMERICA

Date: 07-03-08

RONALD J. TENPAS
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C.  20530

Date: 07-14-08

CHERYL L. SMOUT
Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
 U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611

THE UNDERSIGNED PARTIES enter into this Consent Decree in the case of United States v. William J. Roper Sr. et al., (W.D. N.C.) Civil Action No. 3:00CV472-GCM, relating to the North Belmont PCE Superfund Site.


Franklin E. Hill, Director
Superfund Division
U.S. Environmental Protection Agency, Region IV


Lucia C. Méndez
Associate Regional Counsel
U.S. Environmental Protection Agency, Region IV

THE UNDERSIGNED PARTIES enter into this Consent Decree in the case of <u>United States v.</u> <u>William J. Roper Sr. et al.</u> (W.D.N.C.) Civil Action No. 3:00CV472-GCM, relating to the North Belmont PCE Superfund Site.

**FOR SETTLING DEFENDANTS**

Date: _4-15-08_                    _William J. Roper, Jr._
                                   William J. Roper, Jr.


Date: _4-15-08_                    _Deborah Roper_
                                   Deborah Roper


Date: _4-15-08_                    _Nancy Roper_
                                   Nancy Roper

## EXHIBIT A / APPENDIX A

## Roper Shopping Center Property

| Tax Parcel I.D. No. | DB/PG | Owner |
|---|---|---|
| 183627 | 2854/601 | William J. Roper Jr. / Deborah Roper |
| 183631 | 738/126 <br> 710/463 | Nancy Roper |

**Parcel Information**
**Effective Date of Value 01/01/2007**
Tax Parcel Metadata



183627

Click to enlarge image!

| Tax Field Name | Tax Information |
|---|---|
| PID # | 183627 |
| PIN # | 3586-70-6788 |
| NEIGH.HOOD # | BE005 |
| NEIGH.HOOD NAME | NORTH BELMONT AREA |
| OWNER ID # | 03988817 |
| CURRENT OWNER 1 | ROPER WILLIAM J |
| CURRENT OWNER 2 | ROPER DEBORAH |
| MAILING ADDRESS 1 | 904 S MAIN STREET |
| MAILING ADDRESS 2 | |
| CITY | MT HOLLY |
| STATE | NC |
| ZIP CODE | 28120-0000 |
| **JAN1 OWNER 1** | ROPER WILLIAM J |
| **JAN1 OWNER 2** | ROPER DEBORAH |
| PROPERTY ADDRESS | 510 WOODLAWN RD |
| DEED BOOK | ADMIN |
| DEED PAGE | COMB |
| DEED TYPE | WD |
| SALES AMOUNT | $238,000 |
| DEED RECORDING DATE | 10/23/1998 |
| PLAT BOOK | 012 |
| PLAT PAGE | 105 |
| LEGAL DESC 1 | S L ROPER ESTATE |
| LEGAL DESC 2 | L 1 |
| STRUCTURE CODE # | SHOP1 |
| STRUCTURE TYPE | NEIGHBORHOOD SHOPPING |
| YEAR BUILT | 1962 |
| SQ FT | 26200 |
| BASEMENT | NO |
| # BEDROOMS | 0 |
| # BATHS | 0 |
| MULTI-STRUCTURES | NO |
| ACREAGE | 1.84 |
| DISTRICT CODE | 310 |
| TAX DISTRICT | COMMUNITY FD |

| TOWNSHIP CODE | 15 |
|---|---|
| TOWNSHIP DESC | SOUTH POINT TOWNSHIP |
| VOLUNTARY AG DIST | No |
| LAND VALUE | $65,093 |
| IMPV. VALUE | $157,467 |
| TOTAL VALUE | $222,560 |
| PRESENT USE VALUE ASSESSMENT | NO |
| Property Record Card | **Click** |

Your search criteria: Parcel Number  183627

**All 0 values are pending notification**

Values based on last general reappraisal - 2007

## Options

**Email Results**          **Create Spread Sheet**

Print Map & Report

Building Summary

Parcel Deed History

Parcel Report

Locate Adjoining Owners

Sales for this Neighborhood



Print Scale 1:2846 or 1" = 237'

MAGNOLIA

GOSHEN

BOUNDARY

WOODLAWN

WALTON

JACKSON

SCHOOL

Gaston County, NC

Disclaimer: The information provided is not to be considered as a Legal Document or Description. The Map and Parcel Data is believed to be
Gaston County does not guarantee the accuracy of this information.

**DISCLAIMER :** This is a product of the Gaston County GIS. The data depicted here have been developed with ext from other county departments, as well as other federal, state and local governments' agencies. Gaston County exp responsibility for damages or liability that may arise from the use of this data.

\* QUALIFY CODE: The codes shown are only used for internal Tax Office analysis and for providing information to the I Revenue. Users should use all sources of information, including a review of the deed document to determine the suitability for their specific purpose.

\*\* INDICATED SALES AMOUNT: This is a calculation of the indicated sales consideration as reflected by the excise sta deed document. The excise tax is imposed by State law. Users should review the deed document to determine the sales am

# Parcel Deed History        <u>Qualify Code Description</u>

| Parcel Number | Date Recorded | Deed Name | Deed Book | Deed Page | Qualify Code * | Instrument Type | Indicated Sales Amount ** |
|---|---|---|---|---|---|---|---|
| 183627 | 10/23/1998 | ROPER WILLIAM J & DEBORAH | 2854 | 0601 | D | WD | $238,000 |
| 183627 | 01/01/1899 | ROPER WILLIAM J NANCY H | 0896 | 0087 | C | | $0 |

GASTON COUNTY NC    10/23/98
$476.00

STATE OF
NORTH
CAROLINA

Real Estate
Excise Tax

Excise Tax

| | |
|---|---|
| Time | 12:01 |
| Book | 285-4 |
| Page | 601 |
| Filed | 10/23/98   09 |

| DEED | 12.00 |
|---|---|
| REVENUE | 476.00 |
| TOTAL | 488.00 |
| CHECK | 502.00 |
| CHANGE | 14.00 |
| 12101 | 0001   0094 |

Recording Time, Book and Page

Tax Lot No. .................................................. Parcel Identifier No. ......................................

Verified by ......................................... County on the ............ day of ............................, 19 ......

by ..........................................................................................................................................

Mail after recording to ... William J. Roper and wife, Debroah Roper 106 Jones St
Belmont NC 28012

This instrument was prepared by ... James W. Stancil, Attorney, 129 West Catawba Avenue, Mt. Holly, NC.
Brief description for the index    28120

NO TITLE EXAM.

# NORTH CAROLINA GENERAL WARRANTY DEED

THIS DEED made this ...22.. day of ..October............, 19.98., by and between

| GRANTOR | GRANTEE |
|---|---|
| William J. Roper and wife, Nancy Roper | William J. Roper, Jr. and wife, Debroah Roper |

Enter in appropriate block for each party: name, address, and, if appropriate, character of entity, e.g. corporation or partnership.

The designation Grantor and Grantee as used herein shall include said parties, their heirs, successors, and assigns, and shall include singular, plural, masculine, feminine or neuter as required by context.

WITNESSETH, that the Grantor, for a valuable consideration paid by the Grantee, the receipt of which is hereby acknowledged, has and by these presents does grant, bargain, sell and convey unto the Grantee in fee simple, all that certain lot or parcel of land situated in the City of ...................................... Southpoint ...... Township,
Gaston ..... County, North Carolina and more particularly described as follows:

     See attached Exhibit A

65

RECORD ...... 12.00
REVENUE 476.00

N. C. Bar Assoc. Form No. 3 © 1976, Revised © 1977 — James Williams & Co., Inc., Box 127, Yadkinville, N C 27066
Printed by Agreement with the N. C. Bar Assoc. — 1981

225-4 601

The property hereinabove described was acquired by Grantor by instrument recorded in ..............................................

Deed Book 896, Page 87; Deed Book 778, Page 721, Gaston County Public Registry

A map showing the above described property is recorded in Plat Book ......12........... page ....105.........

TO HAVE AND TO HOLD the aforesaid lot or parcel of land and all privileges and appurtenances thereto belonging to the Grantee in fee simple.

And the Grantor covenants with the Grantee, that Grantor is seized of the premises in fee simple, has the right to convey the same in fee simple, that title is marketable and free and clear of all encumbrances, and that Grantor will warrant and defend the title against the lawful claims of all persons whomsoever except for the exceptions hereinafter stated.
Title to the property hereinabove described is subject to the following exceptions:

IN WITNESS WHEREOF, the Grantor has hereunto set his hand and seal, or if corporate, has caused this instrument to be signed in its corporate name by its duly authorized officers and its seal to be hereunto affixed by authority of its Board of Directors, the day and year first above written.

.......................................................(SEAL)
(Corporate Name)

BY ..................................................

..............................President

ATTEST:

.......................Secretary (Corporate Seal)

USE BLACK INK ONLY

_William J. Roper_ .......................................(SEAL)
_Nancy Roper_ .......................................(SEAL)
.......................................(SEAL)
.......................................(SEAL)

NORTH CAROLINA, ............Gaston.......... County.

I, a Notary Public of the County and State aforesaid, certify that ...........................
William J. Roper and wife, Nancy Roper ........................... Grantor,
personally appeared before me this day and acknowledged the execution of the foregoing instrument. Witness my hand and official stamp or seal, this ..22.. day of ..October.. 19..98...
My commission expires: 5-23-2003 .................... Notary Public

SEAL-STAMP

NORTH CAROLINA, .......................County.
I, a Notary Public of the County and State aforesaid, certify that ........................... Secretary of
personally came before me this day and acknowledged that ... he is ........................... a North Carolina corporation, and that by authority duly given and as the act of the corporation, the foregoing instrument was signed in its name by its ...........................
President, sealed with its corporate seal and attested by ............ as its ........................... Secretary.
Witness my hand and official stamp or seal, this ......day of ......................, 19...........
My commission expires: ........................... Notary Public

The foregoing Certificate(s) of ...........................

Is/are certified to be correct. This instrument and this certificate are duly registered at the date and time and in the Book and Page shown on the first page hereof.
................................ REGISTER OF DEEDS FOR ...........................COUNTY
By ........................................Deputy/Assistant Register of Deeds

N.C. Bar Assoc. Form No. 3 © 1976, Revised © 1977

EXHIBIT A

TRACT I: BEING THE FULL CONTENTS of Lots 1 and 6 as shown on that map of the S.L. Roper Estate, North Belmont, North Carolina as recorded in the Office of the Register of Deeds of Gaston County, North Carolina in Plat Book 12 at Page 105 to which reference is hereby made for a more full and complete description by metes and bounds.

Being the full contents of that property described in that deed recorded in Book 896 at Page 87 of the Gaston County Public Registry and also as described in the second tract of that deed recorded in Book 778 at Page 721 of the Gaston County Public Registry.

TRACT II: BEGINNING at an old iron stake in the Easterly edge of Woodlawn Road, the Southwesterly corner of the S.L. and Sallie Roper property, and Northwest corner of property of Henry Roper, and runs thence from the point of the Beginning, with Henry Roper's line, North 65-20 East, 445.4 feet to an old iron stake; thence North 11-05 West, 41.15 feet to an iron stake; thence South 65-20 West 458.36 feet to an iron stake in the Easterly edge of Woodlawn Road; thence with the Easterly edge of Woodlawn Road, South 29-23 East, 4014 feet to the point of the Beginning, as shown and described from an unrecorded plat made of S.L. Roper Property by F.C. Rankin, R.S., June 10, 1957.

Being the identical property described as the third tract on that deed recorded in Book 778 at Page 721 of the Gaston County Public Registry.

**Parcel Information**
**Effective Date of Value 01/01/2007**
Tax Parcel Metadata



Click to enlarge image!

| Tax Field Name | Tax Information |
| --- | --- |
| PID # | 183631 |
| PIN # | 3586-70-7695 |
| NEIGH.HOOD # | BE005 |
| NEIGH.HOOD NAME | NORTH BELMONT AREA |
| OWNER ID # | 1449823 |
| CURRENT OWNER 1 | ROPER NANCY H |
| CURRENT OWNER 2 | |
| MAILING ADDRESS 1 | 904 S MAIN ST |
| MAILING ADDRESS 2 | |
| CITY | MT HOLLY |
| STATE | NC |
| ZIP CODE | 28120-0000 |
| **JAN1 OWNER 1** | ROPER NANCY H |
| **JAN1 OWNER 2** | |
| PROPERTY ADDRESS | WOODLAWN AVE |
| DEED BOOK | ADMIN |
| DEED PAGE | COMB |
| DEED TYPE | WD |
| SALES AMOUNT | 0 |
| DEED RECORDING DATE | 04/20/1959 |
| PLAT BOOK | 012 |
| PLAT PAGE | 105 |
| LEGAL DESC 1 | S L ROPER ESTATE |
| LEGAL DESC 2 | |
| STRUCTURE CODE # | |
| STRUCTURE TYPE | |
| YEAR BUILT | 0 |
| SQ FT | 0 |
| BASEMENT | NO |
| # BEDROOMS | 0 |
| # BATHS | 0 |
| MULTI-STRUCTURES | NO |
| ACREAGE | 0.92 |
| DISTRICT CODE | 310 |
| TAX DISTRICT | COMMUNITY FD |

| TOWNSHIP CODE | 15 |
|---|---|
| TOWNSHIP DESC | SOUTH POINT TOWNSHIP |
| VOLUNTARY AG DIST | No |
| LAND VALUE | $40,046 |
| IMPV. VALUE | $2,265 |
| TOTAL VALUE | $42,311 |
| PRESENT USE VALUE ASSESSMENT | NO |
| Property Record Card | **Click** |

Your search criteria: Parcel Number 183631

**All 0 values are pending notification**

Values based on last general reappraisal - 2007

## Options

**Email Results**          **Create Spread Sheet**

Print Map & Report

Building Summary

Parcel Deed History

Parcel Report

Locate Adjoining Owners

Sales for this Neighborhood



Print Scale 1:1819 or 1" = 152'

Gaston County, NC

Disclaimer: The information provided is not to be considered as a Legal Document or Description. The Map and Parcel Data is believed to be
Gaston County does not guarantee the accuracy of this information.

DISCLAIMER : This is a product of the Gaston County GIS. The data depicted here have been developed with exte
from other county departments, as well as other federal, state and local governments' agencies. Gaston County exp
responsibility for damages or liability that may arise from the use of this data.

* QUALIFY CODE: The codes shown are only used for internal Tax Office analysis and for providing information to the
Revenue. Users should use all sources of information, including a review of the deed document to determine the suitability
for their specific purpose.

** INDICATED SALES AMOUNT: This is a calculation of the indicated sales consideration as reflected by the excise sta
deed document. The excise tax is imposed by State law. Users should review the deed document to determine the sales amo

## Parcel Deed History          Qualify Code Description

| Parcel Number | Date Recorded | Deed Name | Deed Book | Deed Page | Qualify Code * | Instrument Type | Indicated Sales Amount ** |
|---|---|---|---|---|---|---|---|
| 183631 | 04/20/1959 | ROPER WILLIAM J & NANCY H | 0738 | 0126 | C | WD | $0 |
| 183631 | 04/20/1959 | ROPER NANCY H | 0738 | 0126 | D | WD | $0 |
| 183631 | 02/03/1958 | ROPER NANCY H | 0710 | 0463 | D | WD | $0 |

STATE OF NORTH CAROLINA, GASTON COUNTY.
The foregoing certificate of Marion K. Higby,
a notary public of Crawford County, State of
Pennsylvania, and the certificate of E.
Stewart Dellinger, a notary public of Gaston
County, State of North Carolina, are adjudged
to be correct. Let the instrument, together
with the certificates, be registered.
Witness my hand, this the 18th day of April,
1959.

_____
Assistant Clerk of Superior Court

Filed for registration at 11:45 o'clock ___ ___
on the 14 ___ day of ___ April ___ 19 57
and Recorded and Verified in the office of the Register
of Deeds of Gaston County, N. C.

in Book 737 Page 123
This 22 day of ___ April ___ 19 57

_____
_____

---

Form WD-101—WARRANTY DEED                    For Sale by James Williams & Co., Yadkinville, N. C.

NORTH CAROLINA, ___GASTON___ COUNTY

THIS DEED, made this ___22nd___ day of ___February___, A. D. 1956

by ___Lillian R. Beaty (husband deceased),___

of ___Gaston___ County and State of ___North Carolina,___

of the first part, to ___William J. Roper and wife, Nancy Roper,___

___Creating an Estate by the Entirety,___

of ___Gaston___ County and State of ___North Carolina___

of the second part:

WITNESSETH, That said ___party of the first part,___

___, in consideration of

___One Hundred Dollars and Other Valuable Considerations,___ Dollars

to ___her___ paid by ___parties of the second part___

the receipt of which is hereby acknowledged ha3 ___bargained and sold, and by these presents

do e8 ___grant, bargain, sell and convey to said___

___parties of the second part, their___

heirs and assigns, a certain tract or parcel of land in ___Southpoint___ Township,

___Gaston___ County, State of ___North Carolina,___ adjoining

the lands of ___

___and others, and bounded as follows, viz:

Being the full contents of Lot Number Two (2), as shown on
map or plat of part of the S. L. Roper Estate, North Belmont, North
Carolina, which plat was made by F. C. Rankin, R. S., February 13th,
1956, and is duly recorded in the Office of the Register of Deeds for
Gaston County in Plat Book 12 at Page 104, to which reference is
hereby made for a more full and complete description by metes and
bounds.

~~S. L. Roper died intestate on December 7, 1917, leaving a widow, Sallie
Roper (now deceased) and three children. The grantors herein con-
stitute all their heirs-at-law of S.L. Roper, deceased.~~

TO HAVE AND TO HOLD the aforesaid tract or parcel of land, and all privileges and
appurtenances thereto belonging, to the said ___parties of the second part,___
___their___
___heirs and assigns,

to ___their___ only use and behoof forever.

And the said _____ party of the first part,

_____ for ___her self___ and ___her___

heirs, executors and administrators, covenant __s__ with said

___parties of the second part,___ _____ heirs and assigns, that

___she is___ seized of said premises in fee and ha __s__ _____ right to convey in fee simple;

that the same are free and clear from all encumbrances, and that ___she___ ___do es___ hereby

forever warrant and will forever defend the said title to the same against the claims of all persons

whomsoever. _____

_____

IN TESTIMONY WHEREOF, the said ___Lillian R. Beaty  (husband deceased)___

ha __s__ hereunto set __her__ hand and seal the day and year first above written.

_____Lillian R. Beaty_____ (SEAL)

_____ (SEAL)

ATTEST:

_____Inez Little____ _____ (SEAL)

_____ (SEAL)

STATE OF NORTH CAROLINA ___Gaston___ County.

I, ___Inez Little,___ _____, Notary Public, do hereby certify that

___Lillian R. Beaty___ and ___(husband deceased),___

his wife, personally appeared before me this day and acknowledged the due execution of the

annexed Deed of Conveyance.

Witness my hand and notarial seal, this ___22nd___ day of ___February,___ A. D. 19__55__.

_____Inez Little___, N. P. (Seal)

My commission expires ___Sept. 29th, 1956.___

STATE OF NORTH CAROLINA ___Gaston___ County.

The foregoing certificate of ___Inez Little___

a Notary Public of ___Gaston___ County, State of North Carolina, is

adjudged to be correct. Let the instrument, with the certificates, be registered.

Witness my hand and official seal, this ___20th___ day of ___April,___ A. D. 19__55__.

_____Betty R. Jenkins___, ___Ass't___
Clerk Superior Court.

---

## WARRANTY DEED

Lillian R. Beaty (widow)

TO

William J. Roper and wife, Nancy
Roper, Creating an Estate by the
Entirety.

Consideration $100.00, et als.

Dated 22nd day of February, 1955.

Filed for registration on the ___20___ day of ___April___ 19__55__
at 11:32 o'clock ___A___. M. and registered in the office of the Register of Deeds
for ___Gaston___

County, N. C., this ___21st___ day of
___April___ 19__55__ at _____ o'clock _____ M. in Book ___737___
& Deed, on page ___414___ and verified.

___N. J.___ Register of Deeds
_____ Ass't

Prepared by: R. S. GASTON and W. C. SMITH, Attorneys

Form WD-101-WARRANTY DEED      For Sale by James Williams & Co., Yadkinville, N. C.

463

NORTH CAROLINA,      GASTON      COUNTY

THIS DEED, made this...... 22nd .....day of...... February, ....., A. D. 19..56.,
by...Lillian R. Beaty (husband deceased); Henry L. Roper and wife,
Myrtle Roper, and Annie R. O'Daniel (husband deceased),

of...... Gaston .....County and State of...... North Carolina, ....,
of the first part, to...... William J. Roper and wife, Nancy Roper,
Creating an Estate by the Entirety,
of...... Gaston .....County and State of...... North Carolina, ....,
of the second part:

WITNESSETH, That said...... parties of the first part, ....,

...... , in consideration of
ONE HUNDRED DOLLARS AND OTHER VALUABLE CONSIDERATIONS, ....DOLLARS,
to...them .....paid by...... parties of the second part, ....,
the receipt of which is hereby acknowledged ha..ve .....bargained and sold, and by these presents
do......grant, bargain, sell and convey to said......
parties of the second part, their
heirs and assigns, a certain tract or parcel of land in...... Southpoint .............Township,
Gaston .............County, State of...... North Carolina, ............., adjoining
the lands of......

...... and others, and bounded as follows, viz.:

Being the full contents of Lot Number Five (5), as shown on
map or plat of part of the S. L. Roper Estate, North Belmont, North
Carolina, which plat was made by F. C. Rankin, R. S., February 13th,
1956, and is duly recorded in the Office of the Register of Deeds
for Gaston County in Plat Book 12 at Page 105, to which reference is
hereby made for a more full and complete description by metes and
bounds.

S. L. Roper died intestate on December 7, 1937, leaving a widow,
Sallie Roper (now deceased) and three children    The grantors
herein constitute all the heirs at law of S. L. Roper, deceased.

TO HAVE AND TO HOLD the aforesaid tract or parcel of land, and all privileges and
appurtenances thereto belonging, to the said...... parties of the second part,
their .............heirs and assigns,
to...their .....only use and behoof forever.

And the said...... parties of the first part,
...... for...... them selves .....and their
heirs, executors and administrators, covenant...with said......
parties of the second part, their .............heirs and assigns, that
they are .....seized of said premises in fee and ha..ve .............right to convey in fee simple;
that the same are free and clear from all encumbrances, and that...they do.............hereby
forever warrant and will forever defend the said title to the same against the claims of all persons
whomsoever.

O'Daniel (widow) and Henry L. Roper and wife, Myrtle Roper,

ha ve... hereunto set their hand.... and seal... the day and year first above written.

Lillian R. Beaty      (SEAL)

Annie R. Grant      (SEAL)

Henry Roper      (SEAL)

ATTEST:       Myrtle Roper     (SEAL)

Inez Little

---

STATE OF NORTH CAROLINA,    Gaston     County.

I,   Inez Little,      Notary Public, do hereby certify that

Lillian R. Beaty (widow), Annie R.   and   O'Daniel (widow), and Henry L. Roper

           Myrtle Roper,

personally appeared before me this day and acknowledged the due execution of the

foregoing Deed of Conveyance.

Witness my hand and notarial seal, this 22nd day of February, A. D. 19 56.

        Inez Little,    N. P. (Seal)

My commission expires: Sept. 29th, 1956.

---

STATE OF NORTH CAROLINA,   Gaston    County.

The foregoing certificate of   Inez Little

a Notary Public of    Gaston     County, State of North Carolina, is

adjudged to be correct. Let the instrument, with the certificates, be registered.

Witness my hand and official seal, this   3rd day of   February,   A. D. 19 56.

       Betty B. Jenkins, Asst.

        Clerk Superior Court.

---

## WARRANTY DEED

Lillian R. Beaty and others,

TO

William J. Roper and wife, Nancy H.
Roper, Creating an Estate by
The Entirety

Consideration $100, et al.

Dated 22nd day of February, 1956.

Filed for registration on the 3rd day of February, 1956
at 2:45 o'clock. P.M. and registered in the office of the Register of Deeds for Gaston County, N.C. this day of February, 19 56 at o'clock. M. in Book 710 of Deeds on page 464 and verified

     Register of Deeds

---

Prepared by

Form WD-101-WARRANTY DEED    For Sale by James Williams & Co., Yadkinville, N. C.

NORTH CAROLINA,    Gaston    COUNTY

THIS DEED, made this 30th day of May A. D. 19 55

by Forney A. Rankin and wife, Jean Cantrell Rankin,

of   Gaston   County and State of   North Carolina

of the first part, to   William J. Roper and wife, Nancy H. Roper,

    Creating an Estate by the Entirety,

of   Gaston   County and State of   North Carolina

of the second part:

WITNESSETH, That said Parties of the first part

# EXHIBIT B / APPENDIX B

### North Belmont PCE
### Site Map

### from

### October 1997 Record of Decision
### Page 5-9-0008



SOURCE AREA

NORTH BELMONT PCE "A"

NORTH BELMONT PCE "B"

JADCO-HUGHES SITE

NOTE: NOT TO SCALE

SOURCE: DeLORME MAP EXPERT

**FIGURE 1-1. SITE LOCATION MAP**

